**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| *In re* JOY L. MARSHALL, | : |
| Debtor. | : |
| JOY L. MARSHALL | : |
| Appellant, | : Case No. 2:10-cv-00543 |
| v. | : JUDGE ALGENON L. MARBLEY |
| DICKSON & CAMPBELL, L.L.C., | : |
| Appellee. | : |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on appeal from Bankruptcy Court. Appellant Joy L. Marshall appeals the Bankruptcy Court's judgement finding that her actions constituted a willful and malicious injury, and that her debt to Appellee William Campbell is nondischargeable under 11 U.S.C. § 523(a)(6). For the reasons stated below, the Court **AFFIRMS** the Bankruptcy Court's judgment.

**II. BACKGROUND**

Appellant Joy Marshall ("Marshall") is an attorney with a general practice in Columbus, Ohio. Appellee William Campbell ("Campbell") is an attorney with a general practice in Columbus, Ohio. At the time of the underlying nursing home negligence action, Campbell was a principal member of the firm Dickson & Campbell. At the time of the bankruptcy trial, that firm was no longer an entity. Campbell was assigned the rights to all of his cases, and merged his

practice with the Elk & Elk Law Firm. Under the redemption agreement dissolving Dickson & Campbell, Campbell has all of the rights to this case.

This appeal arises out of a dispute regarding attorney's fees earned in a nursing home negligence case brought by Bessie Tyus ("Tyus") against Grande Pointe Health Community in the Court of Common Pleas of Cuyahoga County, Ohio. The Appellee, Campbell, was Tyus's first attorney in the action. He withdrew as counsel and the appellant, Marshall, was substituted. Shortly thereafter, the case was settled for $150,000. Campbell then filed a motion to declare and enforce a charging lien upon the settlement proceeds.

On June 12, 2006, the state court issued an order directing the settlement proceeds to be distributed to Marshall. She was ordered to distribute no more than $85,000 to Tyus and to deposit the remaining funds in the proper accounts pending the State Court's ruling on the outstanding dispute regarding attorney's fees.

On June 22, 2006, Campbell withdrew his motion to enforce the charging lien. He advised the court that he would file the appropriate post-judgment motion to intervene in order to seek enforcement of the charging lien. The state court did not vacate or amend its order directing Marshall as to how to distribute the settlement proceeds. The next day, Marshall released the remaining funds to Tyus. Tyus remitted $50,000 from the settlement proceeds to Marshall for attorney's fees.

On June 26, 2006, Campbell filed a motion to intervene. On August 1, 2006, Cassandra Collier-Williams entered a notice of appearance on behalf of Tyus. Two weeks later, Marshall withdrew. As neither Marshall nor Collier-Williams contested the motion of enforcement of the charging lien and fees, the state court granted the motion. The court ordered Marshall to

transmit $60,443 to Collier-Williams and Tyus on or before August 18, 2006. Further, it found that from these funds, Collier-Williams and Tyus agreed that $50,443 would be transmitted to Dickson & Campbell for attorney's fees and costs, and $4,557 would be awarded to Marshall for her fees.

On August 21, 2006, Collier-Williams informed the court that Marshall had not transmitted the fees as ordered. Two days later, the court held a show cause hearing. Marshall called the court to say that she would be late; she did not appear until after the court had called the case and the hearing had concluded. At the hearing, Tyus informed the court that Marshall had transmitted the entire $150,000 to her, and that after she received the money, she had paid Marshall $50,000 for attorney's fees. A bench warrant was issued for Marshall's failure to appear. When she arrived, she was remanded to custody. She was released on bond.

Another show cause hearing was held on September 21, 2006. Marshall did not produce the funds, and informed the court that she had transmitted the money to Tyus. Her records did not account for the check that Tyus had tendered to her. Campbell told the court that he had received none of the $50,443. Marshall was found in contempt because she had "specifically and willfully disobeyed the orders of [the] court and ha[d] misbehaved in the performance of her duties as an officer of the court. Further, she had "...disbursed and misappropriated funds..." in violation of the court's orders.

On April 22, 2008, Marshall filed a Petition for Relief under Chapter 13 of the Bankruptcy Code seeking to discharge the monies owed to Campbell. On March 15, 2009, the case was converted to a case under Chapter 7 of the Bankruptcy Code. Campbell filed this case with the Bankruptcy Court on October 15, 2008, alleging that Marshall's debt could not be

3

discharged under 11 U.S.C. §523 under either §523(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny or §523(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.  The bankruptcy court held a hearing on January 8, 2010.  The court found that Marshall's debt to Campbell was nondischargeable under 11 U.S.C. § 523(a)(6).  Marshall subsequently filed this appeal.

### III. STANDARD OF REVIEW

The District Court, serving in an appellate capacity, reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law de novo.  *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 106 F.3d 1255, 1258 (6th Cir. 1997).  The Court will only construe the Bankruptcy Court's factual findings as clearly erroneous when "'on the entire evidence, [the Court] is left with the definite and firm conviction that a mistake has been committed.'" *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Ayen*, 997 F.2d 1150, 1152 (6th Cir. 1993).  The Bankruptcy Court's findings of fact will not be disturbed unless there is the "most cogent evidence of mistake of justice."  *In re Edward M. Johnson and Assocs., Inc.*, 845 F.2d 1395, 1401 (6th Cir.1988)(quoting *Slodov v. United States*, 552 F.2d 159, 162 (6th Cir.1977), *rev'd on other grounds*, 436 U.S. 238, 98 S.Ct. 1778 (1978)).  Where a Bankruptcy Court's determination involves a mixed question of law and fact, the District Court must "break it down into its constituent parts and apply the appropriate standard of review for each part." *Wesbanco*, 106 F.3d at 1259 (citing *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir.1993)).

## IV. LAW AND ANALYSIS

### A. Findings of Fact

The Federal Rules of Bankruptcy Procedure require the bankruptcy court to make its findings in accordance with the procedure outlined in Federal Rule of Civil Procedure 52.  *Fed. R. Bankr. P.* 7052.  FRCP 52(a) requires, that in actions without a jury, the court must make separate findings of fact and conclusions of law.  *Fed. R. Civ. P.* 52(a).

Marshall contests that several of the bankruptcy court's findings of fact are not in the record, including:

> (1) The state court issued an order on June 12, 2006 directing the settlement proceeds to be distributed to the plaintiff.
>
> (2) Campbell withdrew his motion to enforce his charging lien on June 22, 2006.
>
> (3) The trial court granted the motion to enforce the charging lien on August 15, 2006.
>
> (4) The state court scheduled two show cause hearings, one on August 23 and one on August 28, and Marshall failed to show for either of them.
>
> (5) Cassandra Collier-Williams substituted for Marshall on August 1, 2006 instead of, as the docket states, made her appearance as additional counsel.

Upon review of the record before this Court, it is clear that the bankruptcy court did not err in making these findings of fact.  The evidence in the record fully supports each of these findings, as does the testimony before the court support each of these findings, and the Federal Rules Civil of Procedure require "the reviewing court [to] give due regard to the trial court's opportunity to judge the witnesses' credibility."  *Fed. R. Civ. P.* 52(a)(6).  Accordingly, the bankruptcy court's findings of fact are not clearly erroneous.

### B. Conclusions of Law

The discharge of a bankrupt party's debts is central to bankruptcy's purpose of providing debtors a "fresh start."  As discharging debts can be harmful to creditors, however, the Bankruptcy Code contains certain exceptions to discharge.  Section 523(a) of the Bankruptcy Code provides that a discharge in bankruptcy shall not discharge an individual debtor from certain kinds of obligations.  In the Sixth Circuit, these exceptions to discharge are to be strictly construed against the creditor.  *Rembert v. AT&T Universal Card Serv., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).  Campbell argues that Marshall's debt to him should be excepted from discharge under § 523(a)(4) and (6).[1]  The Bankruptcy Court held the debt nondischargeable under Section 523(a)(6).

### 1. Section 523(a)(4)

The bankruptcy court found that Campbell did not make an adequate showing under section 523(a)(4).  This section provides that "a discharge under [the Bankruptcy Code] does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny**."**  11 U.S.C. §523(a)(4).  The phrase "while acting in a fiduciary capacity" modifies the terms "fraud or defalcation," thus embezzlement and larceny are actionable regardless of whether the debtor was or was not a fiduciary.  104 B.R. 830

---

[1] 11 U.S.C. §523 provides:
(a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
    (4) for a fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

First, Campbell contends that the debt is nondischargeable because Marshall engaged in fraud or defalcation while acting in a fiduciary capacity. A claim for fraud or defalcation results from "embezzlement and misappropriation to a fiduciary, as well as the 'failure to properly account for such funds.'" *In re Blaszak*, 397 F.3d 386, 390 (6th Cir. 2005) (quoting *In re Interstate Agency*, 760 F.2d 121, 125 (6th Cir. 1985)). In order to find a debt nondischargeable under §523(a)(4) for fraud or defalcation, the Sixth Circuit requires, by a preponderance of the evidence: (1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *In re Blaszak*, 397 F.3d at 390. The Sixth Circuit construes the term "fiduciary capacity" narrowly in these circumstances, and has limited the defalcation provision to express or technical trusts; it does not extend to constructive or implied trusts or someone who fails to meet their obligations under a common law fiduciary relationship. *In re Bucci*, 493 F.3d 635, 639 (6th Cir. 2007). In order to establish that an express or technical trust exists, a creditor must show: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Blaszak*, 397 F.3d at 391-92. The evidence shows that Marshall cannot establish prong (4); the state court directed Marshall to hold the funds until the fee dispute could be resolved, and thus it is clear that no beneficiary was established. Accordingly, an express or technical trust does not exist in this case. As a result, no fiduciary relationship existed between Campbell and Marshall and this exception to discharge does not apply.

Second, Campbell contends that the debt is nondischargeable because Marshall embezzled the funds. For the purposes of §523(a)(4), embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Brady*, 101 F.3d 1165, 1172-3 (6th Cir. 1996)

(internal citations omitted). In order to show embezzlement, a creditor must prove three elements by a preponderance of the evidence: (1) the property of the creditor was entrusted to the debtor; (2) the debtor appropriated the property for a use other than that for which it was entrusted; and (3) the circumstances indicate fraud. *Id.*, at 1173. Although there is evidence to support prongs (2) and (3), Campbell cannot establish prong (1). When the court entrusted the settlement proceeds to Marshall, the fee dispute was still outstanding and it was uncertain how much, if any, of the proceeds belonged to Campbell. It thus cannot be established that the property of Campbell was entrusted to Marshall as the first prong requires; accordingly, the embezzlement exception does not apply.

Third, Campbell contends that the debt is nondischargeable because Marshall committed larceny. For the purposes of §523(a)(4), larceny is the same as embezzlement, except that the original taking must be unlawful. *In re Bustamente*, 239 B.R. 770, 777 (Bankr. N.D. Ohio 1999). As there is no evidence that Marshall's initial possession of the settlement proceeds was unlawful, larceny is inapplicable.

### 2. Section 523(a)(6)

The Bankruptcy Court found that Marshall willfully and maliciously caused an injury to Campbell by disbursing the settlement funds in violation of the court's June 12, 2006 order.

Section 523(a)(6) provides that "a discharge under [the Bankruptcy Code] does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(4). First, a willful injury under §523(a)(6) requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, xx (1998). Unless "the

8

actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it," he has not committed a willful and malicious injury. *In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999) (quoting *Restatement (Second) of Torts* §8A, at 15 (1964)). Second, a "malicious" injury requires a showing of: (1) a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) there is no just cause or excuse for the action. *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226, 1228 (6th Cir. 1991).

The evidence establishes that Marshall intended to cause harm, or at the very least, was aware that her actions would cause harm, when she transferred the funds, which satisfies the willful injury requirement of §523(a)(6). The action at issue is Marshall's transfer of the settlement funds from the account she had been ordered to create by the court to Tyus. The court had ordered her to keep the money in the account until the attorney's fees dispute had been resolved. When Campbell withdrew his initial motion to enforce the charging lien, he notified the court that he would file the appropriate post-judgment motion to intervene in order to seek enforcement of the charging lien. This information was available on the notice that Marshall received. Therefore, at the time of the transfer, Marshall had notice that a court order requiring her to keep the money in an account was in place, and that Campbell was planning to refile the appropriate motion with the court in order to obtain attorney's fees. In testifying about the transfer, Marshall stated that she believed that she had performed the bulk of the work on the case, and was therefore entitled to the majority of the fees. This was an issue for the court, and not for Marshall, to determine. When she acted on her personal opinion, she knew that she was depriving Campbell of his potential fees from the case, and that her actions would cause harm.

The evidence also establishes that Marshall committed a malicious injury. First, she committed a wrongful act by violating the orders of the court. Although ordered not to distribute the funds, Marshall chose to do so and was subsequently ordered to show cause multiple times. The state court found that Marshall had "specifically and willfully disobeyed the orders of [the] court and ha[d] misbehaved in the performance of her duties as an officer of the court. She had "...disbursed and misappropriated funds..." in violation of the court's orders. Second, as discussed above, she acted intentionally in distributing the funds. Third, her actions caused injury to Campbell because the transfer of funds deprived Campbell of attorney's fees to which the state court found he was entitled. Fourth, Marshall has offered no just cause or excuse for her actions.

Marshall argues that when Campbell withdrew his motion to enforce the charging lien, she believed that the attorney's fees dispute was no longer before the court and that she was justified in distributing the funds. Campbell's withdrawal, however, explicitly states that he would file the appropriate post-judgment motion to intervene in order to seek enforcement of the charging lien. Furthermore, even when Campbell withdrew his initial motion, the court order requiring Marshall to maintain the funds was still in place. Marshall has been practicing law in Ohio for eight years; her explanations are insufficient to show just cause. As all four prongs have been met, Marshall committed a malicious injury. Accordingly, Campbell has shown that Marshall's actions constituted a willful and malicious injury. The debt is nondischargeable under 11 U.S.C. § 523(a)(6).

## V. Conclusion

For the foregoing reasons, the judgment of the bankruptcy court is **AFFIRMED**. The debt Marshall owes to Campbell in the amount of $50,443 is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY
UNITED STATES DISTRICT COURT**

**Dated: January 26, 2011**